*Jennifer Miles v. Simmons University and Kyle D. Killian*
**Case No.: 0:20-cv-2333**

# EXHIBIT A
*Simmons University's Notice of Removal of Action from State Court*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF GOODHUE | FIRST JUDICIAL DISTRICT |

Jennifer Miles

    Plaintiff,

v.

Simmons University and
Kyle D. Killian,

    Defendants.

Case Type: Civil - Other
Court File No. _____

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Simmons University, Office of General Counsel, 300 The Fenway, Boston, Massachusetts 02115.

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

        Cassandra B. Merrick
        800 Hennepin Avenue
        800 Pence Building
        Minneapolis, MN 55403
        cmerrick@madellaw.com

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

*/s/ Cassandra B. Merrick*
Plaintiff's attorney's signature

October 27, 2020
Dated

CASSANDRA B. MERRICK
Print or type plaintiff's attorney's name

2

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF GOODHUE | FIRST JUDICIAL DISTRICT |

Jennifer Miles

    Plaintiff,

v.

Simmons University and
Kyle D. Killian,

    Defendants.

Case Type: Civil - Other
Court File No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jennifer Miles ("Miles"), for her Complaint against Defendants Simmons University ("Simmons") and Kyle D. Killian ("Killian"), states and alleges as follows:

## INTRODUCTION

1. As the covid-19 pandemic erupted and caused unprecedented shifts in individuals' work schedules and lives around the world in early 2020, virtual meetings grew increasingly popular. In particular, use of the video conferencing platform Zoom grew immensely among schools, businesses, government, and in entertainment. Unfortunately, that popularity resulted in international humiliation for Miles when her professor, Killian, recorded a video of her using the bathroom during a course through Simmons and posted it on the Internet. Her full name was visible on the video. The video "went viral," and was posted and viewed millions of times on social media platforms, including Twitter, Facebook, and YouTube with the hashtag "#PoorJennifer." Miles has since been referenced in talk shows, parodied on "Saturday Night Live," and a Google

search for her name still shows thousands of results relating to the video. Despite her efforts to report the video and have it removed when it crops up, the bell cannot be unrung. Through this lawsuit, Miles seeks to be compensated for the damages she has suffered, to the extent that is possible.

## PARTIES

2. Plaintiff Jennifer Miles is an individual who resides in Goodhue County and who is enrolled as a graduate student in Simmons University's School of Social Work.

3. Defendant Simmons University is a Massachusetts school with its principal place of business located at 300 The Fenway, Boston, Massachusetts 02115.

4. Defendant Kyle D. Killian is an individual who, on information and belief, resides in Massachusetts and was employed by Simmons University at all times relevant to this Complaint.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this dispute pursuant to Minn. Stat. § 484.01, subd. 1(1).

6. Venue is proper in this district pursuant to Minn. Stat. § 542.09 because the causes of action, or parts thereof, alleged herein arose in Goodhue County.

## JURY TRIAL DEMAND

7. Miles demands a jury trial for all claims so triable.

# FACTS

## I. Miles' Relationships with Simmons and Killian

8. Miles enrolled at Simmons in 2017 as a graduate student in its School of Social Work. Her coursework with the school was entirely online, with clinical internships occurring in person.

9. Miles was enrolled in the course SWO 467: Family Approaches through the Simmons School of Social Work in the winter of 2018-2019.

10. Killian was the instructor for the course, SWO 467, when Miles was a student in the course.

11. SWO 467 was a particularly privacy-sensitive course in that students were expected to discuss their clinical social work experiences, which required discussion of private information with the class and instructor as a whole.

12. SWO 467 was intended to teach social work students such principles and lessons as therapeutic approaches for oppressed and marginalized clients, working with diverse populations, cultural humility, and ethics and boundaries in social work.

13. Following winter break in 2019, Simmons and Killian directed that remote course instruction in "live sessions" for SWO 467 occur over the Zoom platform.

14. Zoom is a video telephony platform with which educational institutions and other entities may contract for teleconferencing, telecommuting, and distance education services.

15. On information and belief, Simmons contracted with Zoom beginning in at least January 2019 for distance education and teleconferencing services.

3

16. Students participated in the course from their locations all over the country.

17. In a live session of the course, on or about February 5, 2019, conducted over Zoom and during which Killian was the instructor, Miles was participating from her home in Goodhue County.

18. On information and belief, Killian was participating from his home in Ohio.

19. Killian was leading the discussion among Miles and nine other students.

20. Killian's role in leading the Zoom session was a result of and within the scope of his employment with Simmons.

21. At one point during the course, Miles needed to use the bathroom. She went to do so and brought her laptop with her to ensure she did not miss any discussion from her classmates and Killian. She believed she had set her webcam so that she was not visible to the other participants.

22. Unfortunately, Miles was still visible, and the other participants, including Killian, saw her using the bathroom. Miles realized that the others could see her and immediately stopped using the bathroom and moved the laptop.

23. Although Miles was embarrassed by the incident, her classmates were kind to her and she believed the incident was in the past.

**II.  Miles' Reasonable Expectation of Privacy**

24. The class sessions were recorded for the enrolled students' study purposes only and access to the recordings was restricted to class participants.

25. The class sessions and recordings were confidential.

4

26. Miles did not know or believe that the incident of her using the bathroom while shown on Zoom in class was separately recorded by a cell phone camera.

27. Killian stated the importance of the class remaining confidential to the students both in person and in the course syllabus.

28. The course syllabus for SWO 467 incorporates the terms of the Health Insurance Portability and Accountability Act of 1996, Title IX, and Simmons' Gender-Based Misconduct Policy.

29. The incident occurred in a small, private class setting through Miles' educational institution, Simmons.

### III. Killian's Posting of the #PoorJennifer Video

30. In March 2020, usage of Zoom worldwide increased dramatically because of the covid-19 pandemic.

31. On or about March 23, 2020, Miles began to receive a flurry of calls and text messages from family and friends advising her that she had "gone viral."

32. To her horror, she went online on March 23, 2020 and found countless tweets on Twitter, posts on Facebook, videos on YouTube, and other instances of reposting of a cell phone video of the Zoom screen showing her going to the bathroom during the Simmons' course taught by Killian from a year earlier (the "Zoom Video").

33. Indeed, the hashtag "#PoorJennifer" in reference to the incident had also been posted countless times on the Internet and the video was viewed more than 7 million times before Twitter took it down.

5

34.  Miles' full name, Jennifer Miles, is visible through the entirety of the Zoom Video.

35.  When an individual participates in a Zoom teleconference in "Gallery" view, that individual's web camera is depicted in the upper left-hand corner of that individual's screen.

36.  A screenshot of the Zoom Video is shown below:



37.  Killian is shown in the upper left corner with the name "Kyle Killian" visible.

6

38.  Miles is depicted directly below Killian with the name "Jennifer Miles" visible.

39.  The Simmons course title, "Family Approaches," is visible in the top right corner.

40.  The Zoom Video is a cell phone camera recording the Zoom screen.

41.  Simmons required that the live discussion sessions of the course occur via the Zoom platform.

42.  The Zoom Video was recorded and posted on the Internet to Twitter by Killian within the scope of his employment by Simmons.

43.  On information and belief, Killian's employment with Simmons was terminated after March 2020.

## IV.  The Harm to Miles

44.  The Zoom Video of Miles recorded and posted by Killian was viewed more than 7 million times before it was removed by Twitter.

45.  To this day, a search for Miles' name on the Internet shows thousands of results relating to the Zoom Video recorded and posted by Killian.

46.  The top searches on Google related to her name include "Jennifer Miles Zoom," "Jennifer Miles Bathroom," "Jennifer Miles Bathroom Zoom," "Jennifer Miles Zoom Video," and "Jennifer Miles Family Approaches" (a reference to the Simmons' course title visible in the upper right-hand corner of the Zoom Video).

47.  Despite her best efforts to demand removal of the video from all platforms as it appears, the Zoom Video of Miles continues to be reposted.

7

48. Celebrities such as Kelly Clarkson and Jimmy Kimmel have made references to Miles on their television broadcasts.

49. An episode of "Saturday Night Live" that aired on April 11, 2020, included a parody Zoom video meeting in which one of the characters mistakenly uses the bathroom while the others in the video meeting observe.

50. Publications around the United States and across the world, including in South Africa, the United Kingdom, Australia, and Canada, have reported about the Zoom Video.

51. Miles has suffered mental anguish and humiliation as a result of the recording and posting of this Zoom Video.

52. Miles hopes to obtain employment as a social worker, a job that necessitates a showing of judgment and discretion. Due to the recording and publication of the Zoom Video of Miles, her ability to obtain employment has been harmed.

53. As a result of Killian and Simmons' actions, Miles has been damaged in an amount in excess of $50,000, to be proven at trial.

## COUNT I
## Publication of Private Facts
## (Against Defendant Killian)

54. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

55. Killian recorded the Zoom Video of Miles using the bathroom during a Zoom conference for a Simmons course of which he was the instructor.

8

56. Killian made the Zoom Video that he recorded of Miles public, by communicating it to the public at large or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge, by posting it on Twitter, where it was viewed more than 7 million times over the course of several days.

57. Killian's publication of the Zoom Video would be highly offensive to a reasonable person.

58. The Zoom Video of Miles using the bathroom during a social work course is not of legitimate concern to the public.

59. Because of Killian's conduct, Miles has suffered damages in an amount in excess of $50,000, to be proven at trial.

## COUNT II
## Publication of Private Facts
## (Against Defendant Simmons)

60. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

61. Simmons employed Killian when he recorded the Zoom Video of Miles.

62. Simmons employed Killian when he posted the Zoom Video of Miles.

63. Killian made the Zoom Video that he recorded of Miles public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge, by posting it on Twitter, where it was viewed more than 7 million times over the course of several days, and did so during the course of and within the scope of his employment by Simmons.

64. Killian's publication of the Zoom Video would be highly offensive to a reasonable person.

65. The Zoom Video of Miles using the bathroom during a social work course is not of legitimate concern to the public.

66. Because of Killian's conduct, Simmons is vicariously liable for damages to Miles in an amount in excess of $50,000, to be proven at trial.

## COUNT III
## Intrusion Upon Seclusion
## (Against Defendant Killian)

67. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

68. Killian intruded into the solitude or seclusion of Miles by recording the Zoom Video of her using the bathroom during an educational course.

69. Killian intruded into the solitude or seclusion of Miles by posting the Zoom Video of her using the bathroom during an educational course to Twitter.

70. This intrusion would be highly offensive to a reasonable person.

71. By recording the Zoom Video of her using the bathroom during an educational course, Killian intruded into a matter in which Miles had a legitimate expectation of privacy.

72. Because of Killian's conduct, Miles has suffered damages in an amount in excess of $50,000, to be proven at trial.

## COUNT IV
## Intrusion Upon Seclusion
## (Against Defendant Simmons)

73. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

74. Simmons employed Killian when he recorded the Zoom Video of Miles.

75. Simmons employed Killian when he posted the Zoom Video of Miles.

76. Killian intruded into the solitude or seclusion of Miles by recording the Zoom Video of her using the bathroom during an educational course.

77. Killian intruded into the solitude or seclusion of Miles by posting the Zoom Video of her using the bathroom during an educational course to Twitter.

78. This intrusion would be highly offensive to a reasonable person.

79. By recording the Zoom Video of her using the bathroom during an educational course, Killian intruded into a matter in which Miles had a legitimate expectation of privacy.

80. Killian recorded and posted the Zoom Video within the scope of his employment by Simmons.

81. Because of Killian's conduct, Simmons is vicariously liable for damages to Miles in an amount in excess of $50,000, to be proven at trial.

## COUNT V
## Negligent Infliction of Emotional Distress
## (Against Defendant Killian)

82. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

11

83. Killian's recording and posting of the Zoom Video caused mental anguish to Miles.

84. Killian's recording and posting of the Zoom Video directly invaded Miles' rights.

85. Killian's recording and posting of the Zoom Video constituted willful, wanton, or malicious conduct.

86. Killian's recording and posting of the Zoom video has caused Miles to suffer damages in an amount in excess of $50,000, to be proven at trial.

## COUNT VI
### Negligent Infliction of Emotional Distress
### (Against Defendant Simmons)

87. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

88. Killian's recording and posting of the Zoom Video caused mental anguish to Miles.

89. Killian's recording and posting of the Zoom Video directly invaded Miles' rights.

90. Killian's recording and posting of the Zoom Video constituted willful, wanton, or malicious conduct.

91. Simmons employed Killian when he recorded the Zoom Video of Miles.

92. Simmons employed Killian when he posted the Zoom Video of Miles.

93. Killian's recording and posting of the Zoom Video occurred within the scope of his employment by Simmons.

94. Because of Killian's conduct, Simmons is vicariously liable for damages to Miles in an amount in excess of $50,000, to be proven at trial.

## COUNT VII
## Intentional Infliction of Emotional Distress
## (Against Defendant Killian)

95. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

96. Killian's recording and posting of the Zoom Video was extreme and outrageous.

97. Killian's recording and posting of the Zoom Video was intentional or reckless.

98. Killian's recording and posting of the Zoom Video caused emotional distress to Miles.

99. The emotional distress Killian caused to Miles is severe.

100. Killian's conduct has caused Miles to suffer damages in an amount in excess of $50,000, to be proven at trial.

## COUNT VIII
## Intentional Infliction of Emotional Distress
## (Against Defendant Simmons)

101. Miles realleges the allegations of Paragraphs 1-52 of this Complaint as if fully set forth herein.

102. Killian's recording and posting of the Zoom Video was extreme and outrageous.

103. Killian's recording and posting of the Zoom Video was intentional or reckless.

104. Killian's recording and posting of the Zoom Video caused emotional distress to Miles.

105. The emotional distress Killian caused to Miles is severe.

106. Simmons employed Killian when he recorded the Zoom Video of Miles.

107. Simmons employed Killian when he posted the Zoom Video of Miles.

108. Killian's recording and posting of the Zoom Video occurred within the scope of his employment by Simmons.

109. Because of Killian's conduct, Simmons is vicariously liable for damages to Miles in an amount in excess of $50,000, to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Miles respectfully requests that this Court:

1. Enter judgment in favor of Miles and against Defendants in excess of $50,000 for harm to her interest in privacy resulting from the invasion;

2. Enter judgment in favor of Miles and against Defendants in excess of $50,000 for emotional distress and/or personal humiliation that she has suffered;

3. Enter judgment in favor of Miles and against Defendants in excess of $50,000 for special damages, to be proven at trial; and

4. Enter an award for any and all further relief that is appropriate and equitable under the circumstances.

Date: October 27, 2020

*/s/ Cassandra B. Merrick*
Christopher W. Madel (230297)
Mack H. Reed (398703)
Cassandra B. Merrick (396372)

**MADEL PA**
800 Hennepin Avenue
800 Pence Building
Minneapolis, MN 55403
Phone: 612-605-0630
Fax: 612-326-9990
cmadel@madellaw.com
mreed@madellaw.com
cmerrick@madellaw.com

*Attorneys for Plaintiff Jennifer Miles*

15

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that, pursuant to MINN. STAT. § 549.211, subd. 2, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Date: October 27, 2020                    */s/ Cassandra B. Merrick*
                                          Christopher W. Madel (230297)
                                          Mack H. Reed (398703)
                                          Cassandra B. Merrick (396372)

                                          **MADEL PA**
                                          800 Hennepin Avenue
                                          800 Pence Building
                                          Minneapolis, MN 55403
                                          Phone: 612-605-0630
                                          Fax: 612-326-9990
                                          cmadel@madellaw.com
                                          mreed@madellaw.com
                                          cmerrick@madellaw.com

                                          *Attorneys for Plaintiff Jennifer Miles*