UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jennifer Miles,                                                File No. 20-cv-2333 (ECT/KMM)

      Plaintiff,

v.                                                             **OPINION AND ORDER**

Simmons University and Kyle D. Killian,

      Defendants.

---

Cassandra B. Merrick, Christopher W. Madel, and Mack H. Reed, Madel PA, Minneapolis, MN, for Plaintiff Jennifer Miles.

Raphael Coburn and Sean R. Somermeyer, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendant Simmons University.

Andrew L. Marshall, Bassford Remele, PA, Minneapolis, MN, for Defendant Kyle D. Killian

---

      While participating in an online class for her graduate program through Simmons University, Jennifer Miles used the restroom unaware that she was visible to other class participants via her webcam. In this diversity case removed from Minnesota state court, Miles claims that the professor who taught the class, Kyle Killian, recorded a video of the incident on his cell phone and then posted it online, where it went viral. Miles alleges that Killian committed several torts and that Simmons is vicariously liable for Killian's torts, all under Minnesota law. Simmons has moved to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted because Miles has not plausibly alleged that Killian acted within the scope of his employment when he

recorded and posted the video. The dismissal will be without prejudice because discovery may ultimately reveal evidence that allows Miles to plead a plausible claim against Simmons.

I

According to the Complaint,[1] Miles enrolled as a graduate student in the School of Social Work at Simmons University, a Massachusetts-based institution, in 2017. Compl. ¶¶ 2–3, 8 [ECF No. 1-1]. She participated in some "clinical internships" in person, but all of her classes were online. *Id.* ¶ 8. Around January 2019, Simmons began using Zoom—an online platform that provides "teleconferencing, telecommuting, and distance education services"—for its remote courses. *Id.* ¶¶ 13–15. Students would participate in live virtual class sessions from their homes, and the sessions would be recorded for "study purposes only." *Id.* ¶¶ 16, 24. Those recordings were "confidential" and "restricted to class participants." *Id.* ¶¶ 24–25.

In the winter spanning 2018 and 2019, Killian taught an online course through Simmons called "Family Approaches," and Miles was one of the enrolled students. *Id.* ¶¶ 9–10. In this "particularly privacy-sensitive course," Killian would lead the students in discussions that centered around "therapeutic approaches for oppressed and marginalized clients, working with diverse populations, cultural humility, and ethics and boundaries in social work." *Id.* ¶¶ 11–12, 19, 27–28.

---

[1] In accordance with the standards governing a motion under Rule 12(b)(6), the facts are drawn entirely from Miles's complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

At one point during a virtual class session in February of 2019, Miles needed to use the restroom. Believing that her webcam was off and that she was not visible to the other course participants, she took her laptop to the restroom with her "to ensure she did not miss any discussion." *Id.* ¶¶ 17, 21. It turned out, unfortunately, that Miles was visible, so Killian and the other students could see her using the restroom. *Id.* ¶ 22. As soon as she realized this, she immediately moved the laptop. *Id.* Although "embarrassed by the incident," Miles thought it was "in the past." *Id.* ¶ 23.

The incident resurfaced in March 2020 when the COVID-19 pandemic caused Zoom usage to "increase[] dramatically." *Id.* ¶ 30. After receiving a "flurry of calls and text messages from family and friends," Miles discovered that someone had posted a cell phone video of the February 2019 Zoom meeting in which she was seen using the restroom to Twitter. *Id.* ¶¶ 31–32, 40. Miles's full name is visible throughout the video. *Id.* ¶¶ 34, 38. Killian's image appears in the upper left hand corner of the Zoom window. *Id.* ¶¶ 36–37. According to Miles, this means that the cell phone video was taken from Killian's computer screen and therefore that he was the one to record the video and post it online. *Id.* ¶¶ 35, 42. Killian's employment with Simmons was terminated sometime "after March 2020." *Id.* ¶ 43.

Meanwhile, the video went "viral." *Id.* ¶ 31. It was viewed more than 7 million times and led to "countless" tweets, Facebook posts, YouTube videos, and other reposts. *Id.* ¶¶ 32–33, 44. Celebrities have referenced the video on television, and *Saturday Night Live* aired a parody of it in April 2020. *Id.* ¶¶ 48–49. Although Twitter eventually removed the video and Miles has made "efforts to demand removal of the video from all platforms,"

the video "continues to be reposted," and an internet search of Miles's name reveals "thousands of results" related to the video. *Id.* ¶¶ 33, 45–47. Miles was understandably humiliated, and she is worried that the video will jeopardize her employment prospects in the social work field. *Id.* ¶¶ 51–52.

Miles sued Simmons and Killian in state court to recover for her injuries. She claims that Killian is personally liable for the torts of publication of private facts, intrusion upon seclusion, negligent infliction of emotional distress, and intentional infliction of emotional distress. *Id.* ¶¶ 54–59, 67–72, 82–86, 95–100. And she claims that Simmons is vicariously liable for Killian's commission of each one of those torts. *Id.* ¶¶ 60–66, 73–81, 87–94, 101–09. Killian, who was originally pro se but is now represented by counsel, filed an answer in which he denied Miles's allegations. ECF No. 6. After Defendants removed the case to federal court, Simmons moved to dismiss the claims against it under Rule 12(b)(6). ECF No. 9.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III

Simmons raises essentially two issues in its motion. The first is whether Miles has adequately alleged a basis to hold Simmons liable for Killian's actions. *See* Def.'s Mem. at 5–9 [ECF No. 11]. If Simmons prevails on this issue, then it must be dismissed as a defendant because all of Miles's claims against it are predicated on Killian's conduct. The second issue is whether Miles has plausibly alleged a claim for negligent infliction of emotional distress, *see* Def.'s Mem. at 9–10, but this issue is no longer in dispute. Even assuming that Miles could otherwise proceed with that claim against Simmons, she stipulated to its dismissal without prejudice at the hearing on Simmons's motion.

Under Minnesota law,[2] "an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." *Fahrendorff ex rel. Fahrendorff v. North Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999) (citation omitted); *see also Snilsberg v. Lake Washington Club*, 614 N.W.2d 738, 745 (Minn. Ct. App. 2000). Simmons argues that Miles has not plausibly alleged that Killian was acting within the scope of his employment when he recorded and posted the video of Miles's Zoom class session. Def.'s Mem. at 6–8. Miles has three responses: (1) that the scope of Killian's employment "cannot be resolved on a motion to dismiss"; (2) that she has plausibly alleged

---

[2] The Parties do not dispute that Minnesota law governs the claims in this case. *See Reid v. Wright Med. Tech., Inc.*, No. 19-cv-1471 (ECT/HB), 2019 WL 4861988, at *2 (D. Minn. Oct. 2, 2019) (applying Minnesota law because "both parties cite[d] to Minnesota law and neither party dispute[d] its applicability").

that Killian acted within the scope of his employment; and (3) that she has plausibly alleged an alternative basis for vicarious liability—*i.e.*, that Killian's misconduct was aided by his agency relationship with Simmons. Pl.'s Mem. at 9–15 [ECF No. 15].

A

Miles's argument that the scope of Killian's employment "cannot be resolved on a motion to dismiss" seems to be the subject of competing authorities, but the better interpretation of the interplay between federal pleading standards and Minnesota law is that this issue may be resolved on a Rule 12(b)(6) motion. Under Minnesota law, whether an employee's acts are within the scope of her employment is a question of fact for the jury. *Hagen v. Burmeister & Assocs., Inc.*, 633 N.W.2d 497, 505 (Minn. 2001); *see also Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 583 (Minn. 2008) (Gildea, J., opinion and dissent, Part II, writing for the court on this issue); *Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 47 (Minn. Ct. App. 2009). Citing this proposition, at least one court in this District has said that it is inappropriate to "resol[ve]" disputes about the scope of employment at the pleading stage. *Wendt v. Charter Commc'ns, LLC*, No. 13-cv-1308 (RHK/TNL), 2013 WL 12221823, at *1 (D. Minn. Sept. 4, 2013) (concluding that the scope-of-employment issue "presents an evidentiary burden, not a pleading one[]" and "is simply not amenable to resolution on a motion to dismiss[]"). Other cases from within this District reflect disagreement with this position. *See Davis v. Dollar Tree, Inc.*, No. 18-cv-1118 (WMW/HB), 2019 WL 174911, at *2–3 (D. Minn. Jan. 11, 2019) (dismissing a vicarious-liability claim because the plaintiff alleged no facts to support it); *see also Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*, No. 13-cv-1780 (JRT/JJK), 2013 WL

6

6858573, at *6 (D. Minn. Dec. 30, 2013) (granting a motion to dismiss because "nothing in the preliminary record" supported a reasonable inference that an employee was acting outside the scope of employment, which was a requirement for the claim at issue).[3] Still other cases imply that it would be premature to address the issue on a motion to dismiss, but nonetheless conclude that the particular scope-of-employment allegations at issue in those cases satisfied the plausibility standard. *See Rau v. Roberts*, No. 08-cv-2451 (RHK/JJK), 2009 WL 150954, at *2–3 (D. Minn. Jan. 21, 2009); *see also D.B. v. Hargett*, No. 13-cv-2781 (MJD/LIB), 2014 WL 1371200, at *9 (D. Minn. Apr. 8, 2014) (adopting report and recommendation).

A rule excluding fact questions from consideration on a Rule 12(b)(6) motion to dismiss would not faithfully reflect federal pleading standards. A plaintiff in federal court must support her claims with sufficient factual allegations to render them plausible. "[B]ald allegations" and "conclusory" statements are not enough. *Iqbal*, 556 U.S. at 680–81 (declining to assume the truth of a plaintiff's allegation that government officials "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of

---

[3] Simmons also identifies three cases from other districts in the Eighth Circuit—decided under Nebraska and Missouri law—in which courts have dismissed claims at the pleading stage in part because of insufficient scope-of-employment allegations. *See A.W. v. Neb. Med. Ctr.*, No. 8:19-CV-342, 2020 WL 2126382, at *4–5 (D. Neb. May 5, 2020); *Pearce v. Werner Enters., Inc.*, 116 F. Supp. 3d 948, 954 (D. Neb. 2015); *Harmon v. H & R Block Tax & Bus. Servs., Inc.*, No. 4:13CV116 JCH, 2013 WL 1769107, at *2 n.5 (E.D. Mo. Apr. 24, 2013). These cases contain little useful discussion, but they are marginally persuasive because both Missouri and Nebraska—like Minnesota—treat the scope of employment as a question of fact. *See S.M.S. Trucking Co. v. Midland Vet, Inc.*, 185 N.W.2d 667, 670 (Neb. 1971); *Daugherty v. Allee's Sports Bar & Grill*, 260 S.W.3d 869, 872 (Mo. Ct. App. 2008).

confinement"). The point of this inquiry is to determine the sufficiency of a complaint's factual allegations. Consistent with this understanding of Rule 12(b)(6)'s plausibility standard, the questions at issue in both *Twombly* and *Iqbal* were factual. In *Twombly*, the question was whether the complaint included "enough factual matter (taken as true) to suggest that an agreement was made[]" in violation of § 1 of the Sherman Act. 550 U.S. at 556. In *Iqbal*, it was whether the complaint "contain[ed] facts plausibly showing that [the defendants] purposefully adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin." 556 U.S. at 682. Really, saying that a question is "one of fact for the jury" most often seems intended merely to distinguish the question from a question of law, *see Black's Law Dictionary* 1503 (11th ed. 2019) (defining "question of fact" and "question of law"), and not to suggest that the question can never be resolved short of a jury trial. What's more, declining to hold a plaintiff to the plausibility standard with respect to the scope of employment would effectively treat that issue more like an affirmative defense, which can only support a dismissal when the complaint is "self-defeating." *Roiger v. Veterans Affs. Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019) (quoting 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1357 (3d ed. Nov. 2018 Update)). This would not be appropriate, because a plaintiff has the burden to show that an employee's actions were within the scope of employment. *See Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 771 (D. Minn. 2010).

Miles must therefore plead enough facts to make it plausible that Killian was acting within the scope of his employment with Simmons. If she has not done so, then dismissal is appropriate. *See Davis*, 2019 WL 174911, at *2–3; *see also Deleski Ins. Agency*, 2013 WL 6858573, at *6; *cf. Snilsberg*, 614 N.W.2d at 745 (explaining that the scope of employment can be "determined as a matter of law" at the summary-judgment stage "when the evidence is conclusive on all the elements or there is no evidence to support a necessary element").[4]

B

The next step is to apply the plausibility standard to Miles's Complaint. Although she states multiple times in the Complaint that Killian acted within the scope of his employment, that conclusory allegation alone is not enough. *See* Compl. ¶¶ 42, 63, 80, 93, 108; *see also Iqbal*, 556 U.S. at 680–81. Under Minnesota law, the standard for determining whether an employee's conduct occurred within the scope of employment depends on whether the conduct was intentional or negligent. "[A]n employer is liable for an employee's intentional misconduct if '(1) the source of the [tort] is related to the duties of the employee,' and (2) 'the [tort] occurs within work-related limits of time and place.'" *Frieler*, 751 N.W.2d at 583 (Gildea, J., opinion and dissent, Part II, writing for the court on this issue) (quoting *Fahrendorff*, 597 N.W.2d at 910). When the alleged conduct is negligent, courts consider two additional factors: (1) whether the "conduct was to some

---

[4] It is worth noting that Miles originally filed this case in Minnesota state court, and Minnesota courts have not adopted the plausibility standard from *Twombly* and *Iqbal*. *See Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014).

degree in furtherance of the employer's interests"; and (2) whether the "employee was authorized to perform the type of conduct." *Snilsberg*, 614 N.W.2d at 745. Both standards will be applied here because Miles alleges both intentional and negligent conduct.

Start with Miles's allegations of intentional conduct. "The critical inquiry to determine if the source of the harm is related to the duties of the employee is whether the employee's acts were foreseeable." *Yath*, 767 N.W.2d at 47; *see also Hartford Fire Ins. Co.*, 727 F. Supp. 2d at 770 ("The Court cannot overstate the importance of the foreseeability requirement under Minnesota law."). An employer need not actually foresee the misconduct so long as it is "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Hagen*, 633 N.W.2d at 505 (quoting *Fahrendorff*, 597 N.W.2d at 912). "[F]oreseeability is commonly proven, or a question of fact is raised, when a party establishes that the type of tortious conduct involved is a well-known industry hazard." *Id.* To determine whether an employee's conduct occurred within the work-related limits of time and place, courts usually "consider whether the alleged conduct occurred on the employer's premises, whether the employee had finished working for the day and 'clocked out,' and whether the employee was in that location for job-related purposes." *Cruz v. TMI Hospitality, Inc.*, No. 14-cv-1128 (SRN/FLN), 2015 WL 5996383, at *18 (D. Minn. Oct. 14, 2015); *see also Rau v. Roberts*, 640 F.3d 324, 328–29 (8th Cir. 2011); *Radmer v. OS Salesco, Inc.*, 218 F. Supp. 3d 1023, 1033–34 (D. Minn. 2016).

Here, the Complaint does not allege facts plausibly establishing these elements. The Complaint does not allege facts plausibly showing that Killian's acts were or should have

10

been foreseeable to Simmons. The Complaint never mentions this requirement explicitly. It neither uses the word "foreseeable" nor any of its variants, and it does not otherwise seem to acknowledge this element of Miles's claims against Simmons. Miles does not allege, for example, that the public posting of recorded online courses (or parts of them) is a well-known industry hazard generally or that Killian had demonstrated a tendency toward this kind of behavior. In her brief and at the hearing on the motion, Miles argued that the steps she alleges Simmons took to preserve student confidentiality plausibly show that Simmons foresaw the risk of improper disclosure or publication of confidential information. Miles alleges that Simmons required students to use the Zoom platform, that class sessions were recorded for "study purposes only," and that the recordings were "confidential" and "restricted to class participants." Compl. ¶¶ 24–25, 41. It is conceivable that there would be no need for these policies unless Simmons foresaw a risk of disclosure, but Rule 12(b)(6)'s plausibility standard requires more. Employers adopt confidentiality policies for many reasons. Miles alleges no connection between the policies she alleges Simmons adopted and the kind of disclosure she experienced here, and Minnesota courts have held that the mere adoption of general confidentiality policies does not show foreseeability. *See Yath*, 767 N.W.2d at 46–48 (Minn. Ct. App. 2009) (declining to hold that it was foreseeable as a matter of law that clinic employees would wrongfully access a patient's medical information and post it online and affirming a grant of summary judgment where the plaintiff presented no evidence that such conduct was foreseeable); *see also Pederson v. Long*, No. A16-0329, 2016 WL 4723425, at *3 (Minn. Ct. App. Sept. 12, 2016)

11

(explaining that evidence that an employer adopted an internet-use policy did not make it foreseeable that an employee would use work computers to engage in defamation).

Nor has Miles plausibly alleged that Killian was acting within the "work-related limits of time and place" when he recorded and posted the video. She alleges only that the video appeared online before March 23, 2020, Compl. ¶¶ 31–32, and that "[o]n information and belief, Killian's employment with Simmons was terminated after March 2020[,]" *id.* ¶ 43. These dates (really, date ranges) are not informative. The first only identifies a date by which the video appeared online, and the second describes a very indefinite period. Neither says anything about the time Killian was working unless one assumes he was working all the time, but the Complaint doesn't allege that. Granting that defining the work-related limits of place may prove unconventional when an employee is working from home, the Complaint alleges nothing about this question. It alleges nothing about the circumstances under which Killian posted the video. Something more is required to "nudge[]" Miles's vicarious-liability claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (citation omitted); *see Davis*, 2019 WL 174911, *3 (granting a motion to dismiss where a plaintiff pleaded no facts demonstrating that a retail store should have reasonably foreseen that its employee would get into a physical altercation at work).

The additional factors that apply when a plaintiff alleges negligent conduct do not change this result. Because Miles alleges that Killian violated Simmons's policies, it is clear that he was not "authorized to perform the type of conduct" at issue. *Snilsberg*, 614 N.W.2d at 745. Moreover, nothing in the Complaint suggests that Killian's alleged actions

12

were "to some degree in furtherance of the employer's interests." *Id.* It is difficult to imagine how they could have been.

C

In her brief, Miles recites Minnesota's standards for determining the scope of employment but then pivots to argue that she has plausibly alleged a claim under a different theory of vicarious liability: that Killian was aided by his agency relationship with Simmons. Pl.'s Mem. at 10–11; *see Mallak v. City of Brainerd*, No. 13-cv-2119 (DWF/LIB), 2017 WL 440249, at *16 (D. Minn. Feb. 1, 2017) (describing the scope-of-employment and aided-by-agency theories as "completely separate theor[ies] of liability"). According to Miles, if Killian's position aided his misconduct, then the "misconduct occurred within the course and scope of his employment for purposes of pleading respondeat superior liability." Pl.'s Mem. at 10. Simmons responds that Minnesota does not recognize the "aided-by-agency" theory in this context and that, even if it did, Miles's allegations do not plausibly invoke the theory. Def.'s Reply Mem. at 4–8 [ECF No. 19].

The aided-by-agency theory appears in the Restatement (Second) of Agency § 219. That section first states the familiar rule that "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Id.* § 219(1). It then provides a list of exceptions to the rule that "[a] master is not subject to liability for the torts of his servants acting outside the scope of their employment." *Id.* § 219(2). Among those exceptions is when an agent "was aided in accomplishing the tort by the existence of the agency relation." *Id.* § 219(2)(d). So, as an initial matter, Miles's argument that the aided-by-agency theory is a vehicle for concluding that Killian acted

13

*within* the scope of his employment is flawed, because the theory seems to start with the premise that an employee is acting *outside* the scope of employment.

There are two other problems with this argument. First, Minnesota courts have, so far, only recognized the aided-by-agency theory in a specific, narrow context: to establish an employer's vicarious liability "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over a victimized employee." *Frieler*, 751 N.W.2d at 570; *see also Schmitz v. U.S. Steel Corp.*, 831 N.W.2d 656, 672–73 (Minn. Ct. App. 2013). Miles has cited no Minnesota cases—and research has identified none—that apply the theory to tort liability more broadly. *See Popovich v. Allina Health Sys.*, 946 N.W.2d 885, 890–91 (Minn. 2020) (reviewing the Minnesota Supreme Court's "vicarious liability precedent" and mentioning only "respondeat superior"—*i.e.*, actions taken within the scope of employment—and "apparent authority," without mentioning the aided-by-agency theory). Miles relies on federal cases recognizing the theory for claims under the federal Driver's Privacy Protection Act, *see, e.g.*, *Orduno v. Pietrzak*, 932 F.3d 710, 718–19 (8th Cir. 2019), but those cases did not involve Minnesota law. To apply the theory here would be novel.

There is reason to believe that the Minnesota Supreme Court would not adopt the aided-by-agency theory as an alternative to scope-of-employment liability for torts more generally, as Miles suggests. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) ("When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the [same issue] . . . ." (internal quotation marks and citation omitted)). Multiple state high courts, when presented with

14

the opportunity, have declined to do so. *See Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 223–27 (Mich. 2006); *Groob v. KeyBank*, 843 N.E.2d 1170, 1179–80 (Ohio 2006). The Michigan Supreme Court explained that such a broad exception would "swallow[]" the general rule of nonliability for actions outside the scope of employment and would functionally "subject[] employers to strict liability." *Zsigo*, 716 N.W.2d at 226–27. Moreover, those states that have adopted the theory have—consistent with *Frieler*—generally limited their holdings to cases involving unique power dynamics between the employee and the victim. *Compare Doe v. Forrest*, 853 A.2d 48, 60–67 (Vt. 2004) (applying the aided-by-agency theory to a sexual assault by a police officer, based in part on the "extraordinary power that a law enforcement officer has over a citizen"), *with Doe v. Newbury*, 933 A.2d 196, 198–99 (Vt. 2007) (declining to apply the theory where a pastor had allegedly sexually abused a minor parishioner); *see also Spurlock v. Townes*, 368 P.3d 1213, 1216–17 (N.M. 2016); *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1199 (Alaska 2009). Finally, although perhaps not dispositive, it is worth noting that the Restatement (Third) of Agency omits the aided-by-agency theory as a "distinct basis" of vicarious liability. *See* Restatement (Third) of Agency § 7.08 cmt. b (Oct. 2020 Update). Given these authorities, the better conclusion is that Miles cannot rely on the theory to establish vicarious liability for the torts in this case.

Second, if Miles could rely on the aided-by-agency theory, her allegations do not seem plausible. When recognizing the theory in the context of sexual harassment by an employee's supervisor, the Court in *Frieler* emphasized "the power a supervisor wields over those being supervised." 751 N.W.2d at 570; *accord Spurlock*, 368 P.3d at 1217. The

15

justification for applying the theory is that "the tortfeasor has capitalized on the *power* that the employer gave the tortfeasor, and not merely the opportunity." *Spurlock*, 368 P.3d at 1217 (quoting *Pena v. Greffet*, 110 F. Supp. 3d 1103, 1135 (D.N.M. 2015)). Although it is true that Killian, as a professor, was in a position of authority over Miles, there is no indication in the Complaint that this authority was what enabled him to commit the alleged torts. The tortious conduct did not, for example, require Killian to exert any pressure over Miles. And, as noted above, Miles alleges that the virtual class sessions were recorded for "students' study purposes" and that "access to the recordings was restricted to class participants." Compl. ¶ 24. In other words, Killian's position of authority didn't give him any more access to the recordings—or, presumably, any greater ability to record the video on his cell phone—than any student enrolled in his course.

## IV

There is a question whether the dismissal of Miles's claims against Simmons should be with or without prejudice. After removal and after Simmons filed its motion to dismiss, Miles could have, but did not, amend her complaint. *See* Fed. R. Civ. P. 15(a). And she defended against Simmons's motion by relying on the current version of her Complaint. The answer to this question is important. If the dismissal is with prejudice, that would be the end of Miles's ability to sue Simmons, at least in this round of district-court proceedings. If, on the other hand, the dismissal is without prejudice, then Miles might be

able to obtain information during the discovery process that would enable her to amend her complaint to add claims against Simmons.

Federal courts have disagreed to some extent over whether a dismissal under Rule 12(b)(6) is "normally one with prejudice or without prejudice." *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013) (collecting cases) (adopting report and recommendation). The Eighth Circuit, for example, has stated that "there is a presumption that a dismissal under Rule 12(b)(6) is a judgment on the merits made with prejudice," *Orr v. Clements*, 688 F.3d 463, 465 (8th Cir. 2012), but also that "dismissal of a plaintiff's complaint for failure to comply with Rule 8 should [ordinarily] be with leave to amend," *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983). *But see Phoenix Ent. Partners, LLC v. Star Music, Inc.*, No. 16-cv-4078 (PJS/FLN), 2017 WL 5714021, at *5 (D. Minn. Nov. 28, 2017) (concluding that "Rule 12(b)(6) dismissals are "commonly with prejudice" and distinguishing *Michaelis* on the ground it did not address a dismissal for failure to state a claim). The Federal Rules of Civil Procedure themselves suggest that dismissal with prejudice is the default rule. *See* Fed. R. Civ. P. 41(b) (stating that a dismissal—including one under Rule 12(b)(6)—is an "adjudication on the merits" "[u]nless the dismissal order states otherwise"); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132–33 (D.C. Cir. 2012) (Kavanaugh, J., concurring).

Whichever default rule applies, however, courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *See Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is

typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman*, 2013 WL 5426049, at *16; *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," particularly where discovery directed toward other, non-dismissed defendants might reveal yet-unknown evidence implicating a dismissed defendant, dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

The better answer is to dismiss Miles's claims against Simmons without prejudice. To survive a motion to dismiss, Miles must plausibly allege that Killian was acting within the scope of his employment, and she has not done so. But because the claims against Killian will proceed into discovery, it is possible that Miles will ultimately uncover evidence that allows her to plead a plausible claim against Simmons. At the hearing on Simmons's motion, Miles's counsel acknowledged that there were no more relevant factual allegations to add at this point, and he requested that any dismissal be without prejudice in case discovery revealed more. Under these circumstances, Miles's failure to pursue a preemptive amendment does not require a dismissal with prejudice.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant Simmons University's Motion to Dismiss [ECF No. 9] is **GRANTED**.

2. Counts II, IV, VI, and VIII of the Complaint [ECF No. 1-1] are **DISMISSED WITHOUT PREJUDICE**.

Date:  January 20, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court